UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DANIEL STEWART, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-01021-JPH-TAB |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER DISCUSSING MOTION FOR RELIEF PURSUANT TO 28 U.S.C. §
2255 AND DENYING CERTIFICATE OF APPEALABILITY**

Daniel Stewart "was convicted of drug trafficking, firearms offenses, and
money laundering, primarily based on evidence gathered as a result of a traffic
stop and a subsequent confession." *United States v. Stewart*, 902 F.3d 664, 667
(7th Cir. 2018). Because of previous drug offenses, he received a life sentence.
He now seeks relief from his conviction and sentence under 28 U.S.C. § 2255.
Finding that further development of some of Mr. Stewart's claims was required,
the Court appointed counsel to represent Mr. Stewart and directed additional
briefing. Dkt. 18. That briefing is complete and the § 2255 motion is now ripe for
ruling.

For the reasons explained in this Order, Mr. Stewart's motion is **GRANTED**
to the extent that he is entitled to resentencing. The motion is, in all other
respects, **DENIED**. In addition, the Court finds that a certificate of appealability
should not issue.

1

## I. The § 2255 Motion

A motion pursuant to 28 U.S.C. § 2255 is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *See Davis v. United States*, 417 U.S. 333, 343 (1974). A court may grant relief from a federal conviction or sentence pursuant to § 2255 "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Relief under this statute is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013) (citing *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996); *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997)).

## II. Background

An investigation by the Drug Enforcement Administration and Indianapolis Police identified Mr. Stewart as a possible customer of a large-scale cocaine supplier. *Stewart*, 902 F.3d at 667-68. This led police officers to surveil Mr. Stewart, follow him to a gas station where he conducted what they believed to be a drug transaction, and perform a traffic stop of his vehicle. *Id.* During the traffic stop, a drug-detecting canine alerted to the scent of drugs in Mr. Stewart's car, and officers searched it and found a handgun, cocaine, heroin, methamphetamine, a digital scale, and thousands of dollars in cash. *Id.* at 670.

2

Officers obtained a search warrant for his home where they discovered more drugs and cash. *Id.*

Mr. Stewart was charged in a six-count superseding indictment with possession with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841 and 851; possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); engaging in monetary transactions in property derived from specified unlawful activity, in violation of 18 U.S.C. § 1957; and two counts of money laundering, in violation of 18 U.S.C. § 1956(a)(1). *United States v. Stewart*, No. 1:15-cr-24-JPH-TAB-1 (Cr. Dkt.), dkt. 44.

Before trial, Mr. Stewart moved to suppress the evidence obtained during and as a result of the traffic stop and the confession he gave at the police station, and that motion was denied. Cr. Dkt. 33, 70. After a four-day trial, a jury convicted Mr. Stewart on all counts. Cr. Dkt. 142. Because Mr. Stewart had two qualifying prior felony drug convictions, his sentence on the drug possession count was life imprisonment without parole. *See* 21 U.S.C. § 841(b). For four of the remaining counts, the Court sentenced Mr. Stewart to terms of imprisonment between five and fifteen years to be served concurrent with the life sentence. Cr. Dkt. 165. The sentence for possession of a gun in furtherance of a drug trafficking crime added five consecutive years to the sentence of life imprisonment. *Id.*

Mr. Stewart appealed, and his conviction and sentence were affirmed. He

3

now seeks relief pursuant to § 2255. Mr. Stewart's § 2255 motion attacks both his convictions and sentence. In support, he argues that his trial and appellate counsel rendered ineffective assistance. He also argues that his firearm convictions are invalid under *Rehaif v. United States*, and that the prosecutor was biased against him. The United States agrees that Mr. Stewart is entitled to resentencing but contests the challenges to his convictions. Each of Mr. Stewart's grounds for relief, along with the relevant facts, will be discussed below.[1]

### III. Sentencing Challenge

Mr. Stewart argues that his sentence was improperly enhanced under 21 U.S.C. §§ 841 and 851 and under 18 U.S.C. § 924(e)(1). The United States concedes that Mr. Stewart's claims regarding his predicate offenses under § 851 and § 924 are meritorious, that his mandatory minimum sentence was incorrectly calculated, and that he is entitled to resentencing. Dkt. 34 at 1, 14.

At the time Stewart was convicted, a person convicted under § 841(a)(1) and (b)(1)(A) faced a minimum 10-year sentence. However, if that person had two prior convictions for a "felony drug offense," the minimum sentence became life. 21 U.S.C. § 841(b)(1)(A). Similarly, Mr. Stewart's conviction for being a felon in possession of a firearm was subject to an enhancement based on his prior convictions for "serious drug offenses." *See* 18 U.S.C. § 924(e)(1).

---

[1] In its initial response to Mr. Stewart's § 2255 motion, the United States argued that the motion is untimely. After the Court directed additional briefing, the United States agreed to waive this argument. Dkt. 34 at 1; *see also Clarke v. United States*, 703 F.3d 1098, 1101 (7th Cir. 2013) (the statute of limitations of § 2255 is not jurisdictional). Accordingly, the Court will not address the timeliness of the motion.

The following offenses were used to support the enhancement of Mr. Stewart's sentence:

> 1. June 26, 2001, felony Possession of Cocaine or Narcotic, in Marion County, Indiana, Superior Court, Cause Number 49G20-0012-CF- 25153;
>
> 2. June 13, 2002, felony Dealing in Cocaine or Narcotic, in Marion County, Indiana, Superior Court, Cause Number 49G20-0108-CF-158484;
>
> 3. October 11, 2005, felony Dealing in a Schedule I, II, III Controlled Substance, in Marion County, Indiana, Superior Court, Cause Number 49G20-0410-FB-191924;
>
> 4. October 11, 2005, felony Dealing in a Schedule I, II, III Controlled Substance, in Marion County, Indiana, Superior Court, Cause Number 49G20-0412-FB-215137; and
>
> 5. December 30, 2009, Dealing in a Schedule I, II, III Controlled Substance, in Marion County, Indiana, Superior Court, Cause Number 49G20-0907-FB-060573.

Cr. Dkt. 57.

The United States agrees that these convictions no longer qualify as predicate offenses to support the sentence enhancements. Dkt. 34 at 10-14; *see also Harris v. United States*, 13 F.4th 623, 626-27, 630 (7th Cir. 2021) (Indiana cocaine convictions do not qualify as § 851 predicates); *United States v. De La Torre*, 940 F.3d 938, 951 (7th Cir. 2021) (an "Indiana conviction for dealing in a schedule I, II, or III controlled substance cannot serve as a predicate felony drug offense under § 841(b)(1)(A) and § 802(44)."). The United States explains that, without the enhancements, Mr. Stewart's statutory sentencing range would be 10 years to life on Count 1, *see* 21 U.S.C. § 841(a); and he would be subject to a

maximum sentence of ten years, not 15, on Count 2, *see* 18 U.S.C. § 924(a)(2). (The sentencing ranges for Counts 3 through 6 remain unchanged. *Id.* at 14.)

Mr. Stewart's request for resentencing is **GRANTED.** For the reasons explained below, however, Mr. Stewart's challenges to his conviction are denied.

### IV. Sixth Amendment Right to Trial Counsel

Mr. Stewart claims that he was denied his Sixth Amendment right to counsel because trial counsel was ineffective in several ways. A petitioner claiming ineffective assistance of counsel bears the burden of showing (1) that trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688–94 (1984); *United States v. Jones*, 635 F .3d 909, 915 (7th Cir. 2011). If a petitioner cannot establish one of the *Strickland* prongs, the court need not consider the other. *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014). To satisfy the first prong of the *Strickland* test, the petitioner must direct the Court to specific acts or omissions of his counsel. *Wyatt v. United States,* 574 F.3d 455, 458 (7th Cir. 2009). The Court must then consider whether in light of all of the circumstances counsel's performance was outside the wide range of professionally competent assistance. *Id.* To satisfy the prejudice component, Mr. Stewart must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Mr. Stewart argues that his trial counsel was ineffective by failing to: (1) adequately litigate challenges to the traffic stop at the suppression hearing; (2)

challenge the search of his residence; (3) request a jury instruction directing the jury not to credit the officer's trial testimony; (4) sufficiently challenge the alleged waiver of his *Miranda* rights; (5) challenge the delivery of seized currency and other items; (6) object to the forfeiture; (7) move to dismiss the substantive drug offense as duplicitous; (8) object to prosecutor's reference to him as a drug dealer; and (9) challenge his § 924(c) conviction.

### A. Traffic Stop

Several of Mr. Stewart's claims of ineffective assistance are based on his contention that counsel failed to adequately challenge the admissibility of evidence obtained through the traffic stop and search of his vehicle.

As an initial matter, Mr. Stewart asserts that his counsel[2] admitted in a "Stipulation of Party," dkt. 10-1, that he performed deficiently with regard to the suppression of evidence gained from the traffic stop. The stipulation states in pertinent part:

> Defendant [Stewart] throughout case history (or at some point) requested and/or showed grave concern for:
>
> A reconsideration of motion to suppress and/or change of venue due to lack of knowledge of previous intelligence Judge had when deciding the merit of evidence produced and weighed at Suppression. In a letter defendant sent to court outlining these concerns; the court elected not to acknowledge its content and just forwarded said letter to counsel with instructions that counsel and defendant consult and then address matters to the court through counsel. In a subsequent scheduled video conference, letter was addressed and counsel asked defendant what he declares happen in response to letter. Defendant asked that a continuance be made to assess matters fully and that counsel present said matters to the court concerning statement Judge made at Final PreTrial hearing

---

[2]   Mr. Stewart was represented by two different lawyers during pretrial and trial proceedings. The stipulation to which he refers was signed by counsel Larry Champion.

(which [he alleges] expressed [the judge's] lack of knowledge when deciding on Suppression). Subsequently, no mention of said matters reached the court (by counsel).

*Id.* at 3.[3] Nothing in this statement can be understood to be an affirmative admission that counsel performed deficiently, rather than simply a statement that Mr. Stewart raised the identified concerns with counsel. And, even if it were an attempt to admit deficient performance, attempts by counsel to admit ineffectiveness are not dispositive. *McAfee v. Thurmer*, 589 F.3d 353, 356 (7th Cir. 2009) (attorney's "reflection after the fact is irrelevant to the question of ineffective assistance of counsel"). Because the stipulation is not dispositive, the Court will directly address Mr. Stewarts claims of ineffective assistance.

Mr. Stewart argues that his counsel failed to challenge the traffic stop on the basis that the officer executing the stop did not observe any traffic infraction. But, as the Seventh Circuit explained on appeal, "some ambiguity existed in the record as to whether Ball himself saw Stewart fail to stop or whether he effected the stop on the basis of VanOeveren's report that Stewart failed to stop. Under the collective knowledge doctrine, Ball was entitled to stop Stewart based on the traffic violation witnessed and reported by VanOeveren." *Stewart*, 902 F.3d at 668 n.1.

Mr. Stewart argues more specifically that, if defense counsel had conducted a proper investigation, he would have learned that the traffic stop was the result of an unauthorized wiretap of his telephone. When a lawyer's alleged

---

[3] The stipulation submitted by Mr. Stewart contains several separate statements. Mr. Champion acknowledged statements he agreed with by a checkmark. This statement had a checkmark.

deficiency "is based on a failure to investigate, [the Court requires] the petitioner to allege 'what the investigation would have produced.'" *Long v. United States*, 847 F.3d 916, 920 (7th Cir. 2017). Here, while Mr. Stewart speculates that his telephone was illegally tapped, he presents no evidence to support this speculation. Mr. Stewart asserts that an unauthorized wiretap is the only way officers could have known that he would be at the gas station. But, as the Seventh Circuit explained in Mr. Stewart's direct appeal, law enforcement had begun surveilling him in early January 2015 and, on the day of the arrest, followed him from his apartment to the gas station. *Stewart*, 903 F.3d at 668. He has not supported his claim that his counsel performed deficiently by failing to argue that the search was the result of an illegal wiretap.

Mr. Stewart also argues that his counsel was ineffective for failing to present him as a witness at the suppression hearing. "Where a petitioner claims his trial counsel failed to call a witness, he must make a specific, affirmative showing as to what the missing evidence would have been and prove that this witness's testimony would have produced a different result." *Patel v. United States*, 19 F.3d 1231, 1237 (7th Cir. 1994). Mr. Stewart argues if he had been a witness, he would have been able to rebut the officers' testimony regarding the suspected transaction at the gas station and the traffic violation. But Mr. Stewart does not specifically deny the meeting at the gas station or explain what testimony he would have offered that would have undermined the conclusion that the meeting was a drug transaction. He has therefore failed to show that his testimony at the suppression hearing would have produced a different result.

9

Mr. Stewart further argues that his counsel failed to properly challenge the canine sniff of his vehicle. He argues that counsel failed "to introduce evidence establishing that the canine sniff resulted in a negative result, and that the canine was not qualified to detect the type of controlled substances allegedly discovered in [his] vehicle." Dkt. 1 at 12. He also claims that a video would support this position. First, Mr. Stewart's counsel did challenge the canine's qualifications in the motion to suppress, arguing that the dog was not reliable and was subject to handler error, and that the drugs were planted by police. Cr. Dkt. 33-1 at 1–5. That motion to suppress was denied, Cr. Dkt. 70, and the denial was affirmed on appeal, *Stewart*, 902 F.3d at 673. Mr. Stewart presents no additional evidence that the canine was not qualified to detect the drugs at issue or otherwise demonstrate that his counsel failed to adequately argue the motion to suppress. In addition, to the extent that Mr. Stewart claims that a video would support his argument, he points to no evidence that video of the traffic stop was recorded. In fact, Mr. Stewart's only evidence on the issue is that there was no video because the camera was broken. *See* dkt. 10-11 at 2.

In short, Mr. Stewart's counsel thoroughly challenged the evidence collected during the traffic stop through a suppression motion that confronted the officers' testimony regarding the stop and the canine stiff of Mr. Stewart's car. *See* Cr. Dkt. 68. While Mr. Stewart contends that his counsel did not make all of the arguments or pursue all of the strategies that he wished, he has failed to show that any of his proposed arguments or strategies would have been successful or that his counsel otherwise performed deficiently. No relief is

warranted on this basis.

**B. Search of Mr. Stewart's Residence**

Mr. Stewart also argues that his counsel failed to challenge the admissibility of evidence obtained in the search of his residence. According to Mr. Stewart, no evidence existed that the residence was used to conduct the alleged criminal conduct or that it contained evidence of that conduct.[4] Mr. Stewart claims that the search warrant for his residence was obtained based on the officers' speculation that there would be drugs in the home and therefore was not supported by probable cause as required by the Fourth Amendment.

First, counsel did, in fact, challenge the search warrant for the residence in the motion to suppress. Cr. Dkt. 33-1 at 9-10. Moreover, the United States argues, Mr. Stewart has failed to establish prejudice caused by the alleged failure to oppose the search of his home because any challenge to the search warrant would have been unsuccessful. "Probable cause is established when, considering the totality of the circumstances, there is sufficient evidence to cause a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. Guidry*, 817 F.3d 997, 1006 (7th Cir. 2016) (quoting

---

[4] The United States did not initially respond to this argument and the Court directed it to do so in its Order Appointing Counsel and Directing Further Development. Dkt. 18. Mr. Stewart contends that by failing to respond to this argument, the United States has waived the issue. Dkt. 29 at 10. But the United States explains that it did not intentionally ignore this claim, but merely inadvertently overlooked it. Dkt. 34 at 19. In these circumstances, the Court finds that the United States did not waive its objection to this claim and, even if it did, the Court will exercise its discretion to excuse the government's failure. *See Bourgeois v. Warden*, 977 F.3d 620, 632 (7th Cir. 2020) (finding that government did not waive or forfeit 2255(e) bar to petition for writ of habeas corpus under 28 U.S.C. § 2241, and even if it did, "we would excuse that forfeiture on these facts.").

*United States v. Harris*, 464 F.3d 733, 738 (7th Cir. 2006)) (holding that evidence of distribution quantities of drugs in the defendant's car and the defendant's admission to using drugs in his home was sufficient to support warrant to search the home). Further, "[w]hen a search is authorized by a warrant, deference is owed to the issuing judge's conclusion that there is probable cause if there is 'substantial evidence in the record' that supports his decision." *Id.* (quoting *United States v. Sims,* 551 F.3d 640, 644 (7th Cir. 2008)).

Mr. Stewart is correct that "the presence of narcotics in a defendant's car does not, by itself, establish probable cause to search his home, even if the car is registered to his address." *United States v. Hoffman*, 519 F.3d 672, 676-77 (7th Cir. 2008). But "participation in drug trafficking activities can create probable cause." *Id.* Thus, the Seventh Circuit has held that a traffic stop and discovery of nearly thirty grams of cocaine in separate baggies could lead a judge to infer that the defendant was involved in drug trafficking and the activity occurred in his home. *Id.* As the Seventh Circuit explained in Mr. Stewart's appeal, "[t]he affidavit supporting the warrant detailed the cash, drugs, and gun found in the car." *Stewart*, 902 F.3d at 670. This was sufficient to support an inference that Mr. Stewart was engaging in drug trafficking from his home. *See Hoffman*, 519 F.3d at 676-77. Mr. Stewart therefore has not presented sufficient evidence or argument to show that his counsel performed deficiently in challenging the search of his home.

### C. Jury Instruction

Mr. Stewart next argues that his counsel was ineffective by failing to

request a jury instruction informing jurors not to credit the officer's trial testimony because it was not supported by routine record keeping. Specifically, Mr. Stewart argues that no video recording of the traffic stop was made available even though, he claims, police cars are equipped with dash cam recorders. But Mr. Stewart presents no evidence aside from his understanding of routine police practice that there was a video of the traffic stop. In fact, the only evidence Mr. Stewart submits regarding the alleged video recording is an email exchange stating that there was no dash camera on Officer Ball's car because it was broken. Dkt. 10-11 at 2. Because there is no evidence that a video existed and thus, no evidence that the video was destroyed in bad faith, no cautionary jury instruction was warranted. *Cf. Bracy v. Grondin*, 712 F.3d 1012, 1018 (7th Cir. 2013) (explaining that an adverse inference instruction is warranted "when a party intentionally destroys evidence in bad faith"). Counsel did not perform deficiently for failing to ask for jury instruction on this issue. *See Warren v. Baenen,* 712 F.3d 1090, 1104 (7th Cir. 2013) ("Counsel is not ineffective for failing to raise meritless claims.").

### D. *Miranda* Rights

Mr. Stewart further argues that counsel was ineffective by failing to adequately challenge his waiver of his *Miranda* rights. Mr. Stewart contends that officers continued to question him after he was notified of his *Miranda* rights and requested counsel.

Mr. Stewart's counsel did, in fact, object to the use of Mr. Stewart's confession, albeit for different reasons than Mr. Stewart asserts now. As the

13

Seventh Circuit explained, after the canine alerted to drugs in Mr. Stewart's car, police officers searched the car, found a handgun, and arrested him for being a felon in possession of a firearm. *Stewart*, 902 F.3d at 677. When arresting Mr. Stewart, Detective Ball gave him *Miranda* warnings. *Id.* The Seventh Circuit described what happened next as follows:

> Detective Ball approached Stewart again and said, "That's a lot of drugs, bud. You want to talk to a detective?" Stewart appeared to shake his head to indicate "no." Ball clarified, "You do not want to talk to a detective? Well, you understand I gotta have one come out." Stewart replied, "Can you put me in the car? It's kind of cold out." Ball said, "Yes, they're going to talk to you regardless so you'll get in the car at that point. I have a dog in my car." Ball then radioed for narcotics officers to come to the scene.

*Id.* at 670. On appeal, Mr. Stewart argued that when he shook his head in response to Detective Ball asking him if he wanted to speak to a detective, he invoked his right to remain silent. The Seventh Circuit rejected that argument explaining that Mr. Stewart's head shake "was not an unambiguous invocation of the right to remain silent." *Id.* at 678.

Now, in support of his § 2255 motion, Mr. Stewart asserts "[a]t some point, [he] was read his *Miranda* rights, and invoked the right to counsel." Dkt. 1 at 13. But Mr. Stewart does not argue that his counsel was aware at the time of the suppression hearing of his contention that he asked for a lawyer. Without such knowledge, counsel cannot be faulted for having failed to present an argument in support of suppression based on this assertion.

Mr. Stewart goes on to argue, "[b]ased on the testimony of the arresting officers, it is abundantly clear that [he] was subjected to continued interrogation

even after invoking his right to remain silent and assistance of counsel." *Id.* at 16. While Mr. Stewart testified at trial that, after he was arrested and was in the officers' vehicle, he told officers, "I don't want to talk to anybody but a lawyer," Cr. Dkt. 212 at 55, the officers disputed that he made this statement, *id.* at 132. Thus, contrary to Mr. Stewart's argument, it is not clear from the officers' testimony that he invoked his right to counsel. Further, while Mr. Stewart testified at trial that he invoked his right to counsel, he also presented testimony to support a conclusion that he reinitiated discussions with police. When a suspect invokes his right to have counsel present during custodial interrogation, the interrogation must stop until the suspect has met with counsel. *Edwards v. Arizona,* 451 U.S. 477, 484 (1981). In such cases, however, a suspect may change his mind and initiate further conversation with the police without counsel. *See Oregon v. Bradshaw,* 462 U.S. 1039 (1983); *Edwards,* 451 U.S. at 486 n.9.

Mr. Stewart testified that he was placed in Officer VanOeveren's truck when he was arrested because it was cold outside, but he was later removed from the vehicle because he would not speak to the police. Cr. Dkt. 212 at 56. He later offered to talk if he would be put back in the vehicle to get warm and talked about "frivolous things" while he was in the car. *Id.* He was then driven to the police station where he was told again that he had a right to an attorney and the right to stop answering questions at any time until he speaks to a lawyer. *Id.* at 92-93. Because Mr. Stewart reinitiated discussions, a motion to suppress would not have been successful. Further, even assuming that Mr. Stewart could

15

show that he would have prevailed on a motion to suppress his confession, he cannot establish the second prong of the *Strickland* analysis—that he was prejudiced. Even without his statements, there was overwhelming evidence that he was dealing drugs, including the evidence found in his car and his home. *See Taylor v. Bradley*, 448 F.3d 942, 950 (7th Cir. 2006) (ineffective assistance claims do not prejudice defendants where "overwhelming evidence" of defendant's guilt is presented at trial). No relief is warranted on this basis.

### E. Seized Currency and Other Items

Mr. Stewart argues that counsel failed to challenge the delivery to federal law enforcement officers the currency and other items seized during the search of his home. Mr. Stewart argues that because there was no order from an Indiana state court authorizing the delivery of the seized money and other items, they should not have been used as evidence in his jury trial. But the Marion County Superior Court issued two orders authorizing the transfer of the seized money and property to the United States. Dkt. 14-5. Mr. Stewart's argument otherwise is unsupported.

### F. Forfeiture

Mr. Stewart also argues that his counsel performed deficiently by failing to challenge the sufficiency of the evidence to support the forfeiture of funds that law enforcement had seized. He argues that there was "no evidence of any illegal drug sales engaged in by [Stewart] . . . or that [the money seized] constituted illegal proceeds." Dkt. 1 at 23. But counsel did make such an argument. Cr. Dkt. 213 at 40. And, more importantly, a § 2255 motion, which challenges a criminal

conviction or sentence, is not the proper vehicle to challenge a forfeiture of property. *See Virsnieks v. Smith*, 521 F.3d 707, 722 (7th Cir. 2008) ("Section 2255 affords relief to prisoners who are 'in custody' and who 'claim[ ] the right to be released.'") (quoting 28 U.S.C. § 2255). For this reason, the Seventh Circuit has held that § 2255 is not the proper vehicle for obtaining relief regarding final rulings on issues of property. *Id.* at 718 (stating that "orders of restitution, fines and the revocation of medical and driver's licenses do not satisfy the 'in custody' requirement" for *habeas* relief) (citations omitted); *see also Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997) (stating that Section 2255 is "not available to challenge an order of restitution imposed as part of a criminal sentence" because "the relief requested in such a case [does] not qualify as a 'right to be released'") (citations omitted). Rather, "a criminal forfeiture is part of the defendant's sentence and must be challenged on direct appeal or not at all." *Young v. United States*, 489 F.3d 313, 315 (7th Cir. 2007). Accordingly, Mr. Stewart is not entitled to relief on this claim.

### G. Duplicity

Mr. Stewart further argues that counsel performed deficiently by failing to seek dismissal of the substantive drug offense as duplicitous. "Duplicity is the joining of two or more offenses in a single count." *United States v. Hughes*, 310 F.3d 557, 560 (7th Cir. 2002) (internal quotation omitted). "The overall vice of duplicity is that the jury cannot in a general verdict render its finding on each offense, making it difficult to determine whether a conviction rests on only one of the offenses or both." *United States v. Buchmeier*, 255 F.3d 415, 425 (7th Cir.

2001) (internal quotation omitted). Mr. Stewart argues that Count 1 of the indictment was duplicitous because it alleged possession with the intent to distribute different types of controlled substances. Mr. Stewart argues that, because of the duplicity of the indictment, it is unclear what offense he was convicted of under Count 1. But the verdict form can cure any duplicity. *See United States v. Starks*, 472 F.3d 466, 471 (7th Cir. 2006). And it did so here, making clear that the jury convicted Mr. Stewart of possessing with intent to distribute each controlled substance for which he was charged. Cr. Dkt. 142. Mr. Stewart therefore has failed to establish any deficient performance by counsel in not challenging the indictment as duplicitous.

### H. Failing to Object to Prosecutor's Reference to Him as a Drug Dealer

Mr. Stewart also argues that his counsel performed deficiently by failing to object to the statement in the prosecutor's closing argument that Mr. Stewart was a "drug dealer." Dkt. 1 at 24. But the Seventh Circuit has held that a prosecutor is "free to comment legitimately and speak fully, although harshly, upon the action and conduct of the accused, if the evidence supports his comments." *United States v. Cook,* 432 F.2d 1093, 1096 (7th Cir. 1970); *see also United States v. Durham,* 211 F.3d 437 (7th Cir. 2000) (holding "there is nothing objectionable in the prosecutor's description of the defendant as a 'slick little dope dealer' who 'uses kids and exploits them to peddle poison.'"). Counsel therefore did not perform deficiently by failing to raise an objection that would be unsuccessful. *See Warren,* 712 F.3d at 1104; *United States v. Carter*, 355 F.3d 920, 924 (7th Cir. 2004) ("First, counsel cannot be said to be deficient for failing

to take frivolous action, particularly since a frivolous effort takes attention away from non-frivolous issues. Second, it is evident that failing to make a motion with no chance of success could not possibly prejudice the outcome.").

## I. Section 924(c) Conviction

In his amended motion for relief pursuant to § 2255, Mr. Stewart argues that counsel was ineffective for failing to challenge his 18 U.S.C. § 924(c) conviction for possession of a firearm in furtherance of a drug trafficking crime. Dkt. 6 at 2. Relying on *Bailey v. United States*, 516 U.S. 137, 144 (1995), Mr. Stewart argues that his conviction is invalid because there was no evidence or testimony establishing that he brandished or actively employed a firearm. *Bailey* held that § 924(c)(1), which imposes increased penalties on the use of a firearm in relation to a drug trafficking crime, punishes only "active employment of the firearm" and not mere possession. 516 U.S. at 144. But § 924(c) has since been revised to "cover possession as well as use." *Welch v. United States*, 136 S. Ct. 1257, 1267 (2016). Mr. Stewart was not charged with using or brandishing a firearm, but with possession of a firearm in furtherance of a drug trafficking crime. Cr. Dkt. 44 at 2. There was evidence at trial that a gun was found in Mr. Stewart's car, along with drugs, cash, and a digital scale. *See Stewart*, 902 F.3d at 670. Because § 924(c) permits a conviction for possession of a firearm, not just brandishing or using one, he has failed to show that any challenge to this charge would have been successful.

## V. Sixth Amendment Right to Appellate Counsel

Mr. Stewart also argues that his appellate counsel was constitutionally

ineffective by failing to object to Count One of the Indictment as duplicitous; the use of seized currency to determine the quantity of the controlled substances; and his sentence enhancements.

"To prevail on a claim that appellate counsel's performance was constitutionally deficient, [the petitioner] must show not only that the claims omitted from his direct appeal would have been meritorious, but that they were 'significant and obvious' and 'clearly stronger' than the issues counsel *did* raise." *Clark v. United States*, 680 F. App'x 470, 473 (7th Cir. 2017) (citing *Blake v. United States*, 723 F.3d 870, 888 (7th Cir. 2013)).

### A. Duplicity

First, Mr. Stewart argues that his appellate counsel rendered ineffective assistance by failing to challenge the duplicity of Count One. But, as discussed above, any duplicity was cured by the verdict form. Mr. Stewart therefore has failed to show that an appellate challenge to the indictment would have been meritorious or stronger than the other issues that were raised on appeal. *See Clark*, 680 F. App'x at 473.

### B. Quantity of Controlled Substances

Mr. Stewart also briefly argues that his appellate counsel failed to challenge the use of the amount of money seized to determine the quantity of the illegal substances attributed to him. Dkt. 1 at 25. But the drugs considered in determining Mr. Stewart's offense level were the drugs located in his vehicle at the time of his arrest and those located in his residence. *See* Cr. Dkt. 155 ¶¶ 11, 12, 24. The currency was not used to determine the quantity of drugs. And even

if the court did consider the amount of currency seized, that would not be error. Drug quantities may be estimated based upon average sales over a given time, or by converting money earned in prior sales into an estimated quantity sold. *United States v. Redmond*, 667 F.3d 863, 875 (7th Cir. 2012) (citing *United States v. McMillen*, 8 F.3d 1246, 1250–51 (7th Cir.1993)). Counsel did not perform deficiently by failing to raise this challenge.

### C. Sections 841(b)(1)(A) and 851

Mr. Stewart also argues that his counsel performed deficiently by not challenging the enhancement of his sentence based on prior drug convictions. As discussed above, the United States has agreed that Mr. Stewart is entitled to resentencing on this claim. Thus, this claim of ineffective assistance of appellate counsel is moot.

### VI. *Rehaif v. United States*

Next, Mr. Stewart challenges his indictment and conviction for being a felon in possession of a firearm under *Rehaif v. United States*, 139 S. Ct. 2191 (2019), because he was not charged with knowing that he has previous felony convictions, and the jury was not instructed that he must know that he had previous felony convictions.

In *Rehaif*, the Supreme Court held that:

> [I]n a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm. We express no view, however, about what precisely the Government must prove to establish a defendant's knowledge of status in respect to other § 922(g) provisions not at issue here.

*Id.* at 2200. In other words, under *Rehaif*, the United States' burden includes proving beyond a reasonable doubt that Mr. Stewart knew, at the time of the offense, he had "been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1); *see also United States v. Maez*, 960 F.3d 949, 955 (7th Cir. 2020).

A § 2255 petition is not a substitute for direct appeal. *McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016) ("A claim cannot be raised for the first time in a § 2255 motion if it could have been raised at trial or on direct appeal."). Mr. Stewart did not raise his *Rehaif* claim previously, and thus it is procedurally defaulted. A petitioner cannot bring a defaulted claim in a motion under § 2255 unless he shows both cause and prejudice for the default, or he shows that a fundamental miscarriage of justice would occur because he is actually innocent of the crime. *Cross v. United States*, 892 F.3d 288, 294-95 (7th Cir. 2018); *Richardson v. Lemke*, 745 F.3d 258, 272 (7th Cir. 2014). Mr. Stewart makes no argument of actual innocence, so the court restricts its analysis to cause and prejudice. *See e.g., McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016). "To excuse a procedural default for cause and prejudice, a petitioner must demonstrate both (1) good cause for his failure to raise the defaulted claim before review and (2) actual prejudice stemming from the violations alleged in the defaulted claim. *Delatorre v. United States*, 847 F.3d 837, 843 (7th Cir. 2017).

"A change in the law may constitute cause for a procedural default if it creates a claim that is so novel that its legal basis is not reasonably available to counsel." *Cross v. United States*, 892 F.3d 288, 295 (7th Cir. 2018) (quotation

marks omitted) (*quoting Bousley v. United States*, 523 U.S. 614, 622 (1998)). *Rehaif* created such a change in the law. *See, e.g., United States v. Williams*, 946 F.3d 968, 970 (7th Cir. 2020) ("The Supreme Court's recent decision in *Rehaif* upset what was once a seemingly settled question of federal law." (citation omitted)). As the United States points out, *Rehaif* was not decided until after Mr. Stewart's direct appeal was decided.[5] Thus, cause for the default has been shown and the procedural default will be excused if Mr. Stewart can also show prejudice.

"Prejudice sufficient to overcome a procedural default exists where the violation of the petitioner's federal rights worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States ex rel. Hernandez v. Pierce,* 429 F.Supp.2d 918, 926 (N.D. Ill. 2006) (quoting *United States v. Frady,* 456 U.S. 152, 170 (1982) (emphasis in original)).

While Mr. Stewart can demonstrate cause for his procedural default of his *Rehaif* claim, he cannot demonstrate prejudice for either his claim based on the indictment or the jury instructions. *See also Lacey v. United States*, No. 19-cv-994-SMY, 2020 WL 3129438, at *2 (S.D. Ill. June 12, 2020) (applying procedural default to *Rehaif* claim); *United States v. Burgos*, 2020 WL 2098049 at *3 (N.D. Ill. May 1, 2020) (same).

---

[5] While the United States frames the *Rehaif* claim as an ineffective assistance of counsel claim, Mr. Stewart presented it as a direct challenge to his § 922(g) conviction. Dkt. 1 at 25.

### A. Indictment

First, Mr. Stewart suggests that his indictment was insufficient based on *Rehaif*. To be legally sufficient, an indictment must state all elements of the crime charged, adequately inform the defendant of the nature of the charge so he can prepare a defense and allow the defendant to plead the judgment as a bar to future prosecution. *United States v. White*, 610 F.3d 956, 958 (7th Cir. 2010).

In *United States v. Maez*, 960 F.3d 949 (7th Cir. 2020), the Court of Appeals assumed that, pursuant to *Rehaif*, omitting the requirement that the defendant knew he had previous felonies from the indictment was plain error. *Id.* at 966. Even so, it declined to exercise discretion to correct the error because it was "clear that the wording of the indictment did not undermine the fairness or integrity of judicial proceedings," considering that the defendant's criminal history was extensive and well documented. *Id.*

That reasoning applies in this case. Mr. Stewart had several felony convictions before his indictment in this case, and he served over a year in prison for several of them. Cr. Dkt. 155 at ¶¶ 43-47. Thus, although Mr. Stewart has identified a defect in his indictment that brings it out of step with *Rehaif*, he has not presented a plausible, good faith reason to doubt that a grand jury would have indicted him if presented with post-*Rehaif* charging language. Therefore, he has not shown prejudice warranting relief under § 2255.

### B. Jury Instructions

Mr. Stewart also argues that his jury instructions violated *Rehaif* because the jury was not instructed that it must find that he was aware that he had prior

felony convictions. But, again, at the time he was charged with being a felon in possession of a firearm, he had several felony convictions for which he had spent several years in prison. Cr. Dkt. 155 at ¶¶ 43-47. He therefore has not established prejudice from any error in the jury instructions. *See Maez*, 960 F.3d at 968 ("[W]e are confident that when [the defendant] possessed the charged firearms in this case, he knew he had been convicted of a prior felony."); *Floyd v. United States*, No. 19 C 6578, 2020 WL 374695, at *3 (N.D. Ill. Jan. 23, 2020) ("Because the record indisputably shows that Floyd had been convicted of a felony and sentenced to four years' imprisonment, and because Floyd does not and could not plausibly argue that he did not know of that conviction and its sentence at the time he possessed the firearm, a jury properly instructed under *Rehaif* surely would have convicted him under § 922(g)(1).").

*Rehaif* does not entitle Mr. Stewart to any relief.

### VII. Prosecutorial Bias

Mr. Stewart argues that the prosecutor was biased against him because she was married to the "chief investigator for the Government." Dkt. 1 at 28. He asserts that this "caused a patent and inherent bias against [him] . . . and deprived him of a fundamentally fair trial." and is the reason why "no reasonable plea offer was made." *Id.* In addition, he suggests "possible collusion" on the part of the prosecutor "for 'planting' Larry Champion as [his] representation." Dkt. 10 at 1.

The United States argues that this claim is procedurally defaulted because it was not raised on direct appeal. "Any claim that could have been raised

originally in the trial court and then on direct appeal that is raised for the first time on collateral review is procedurally defaulted." *Delatorre*, 847 F.3d at 843 (citations omitted). Mr. Stewart asserted in his motion that this claim was not raised on direct appeal because of ineffective assistance of counsel. Dkt. 1 at 28. "[F]or an appellate attorney's alleged ineffectiveness to qualify as cause to justify procedural default, the defendant must show the appellate attorney's performance was deficient and the performance prejudiced him in the proceeding." *McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996) (citing *Strickland*, 466 U.S. at 688–94). "To prevail on a claim that appellate counsel's performance was constitutionally deficient, [the petitioner] must show not only that the claims omitted from his direct appeal would have been meritorious, but that they were 'significant and obvious' and 'clearly stronger' than the issues counsel *did* raise." *Clark v. United States*, 680 F. App'x 470, 473 (7th Cir. 2017) (citing *Blake v. United States*, 723 F.3d 870, 888 (7th Cir. 2013)).

On appeal, "[w]hen considering allegations of prosecutorial misconduct, [the] court first determines whether the prosecutor's conduct was improper, and, if so, [the court] must evaluate the conduct 'in light of the entire record' to determine if it deprived the defendant of a fair trial." *United States v. Flournoy*, 842 F.3d 524, 528 (7th Cir. 2016) (quoting *United States v. Smith*, 674 F.3d 722, 728 (7th Cir. 2012)). A defendant is entitled to a new trial only if there is a reasonable possibility that the trial error had a prejudicial effect on the jury's verdict. *United States v. Berry*, 92 F.3d 597, 600 (7th Cir. 1996).

At trial, Mr. Stewart's counsel moved for a mistrial because of the

prosecutor's marriage to Shawn Brady, an agent involved in the case. Cr. Dkt. 211 at 5. Agent Brady was involved in the arrest and interview of Juan Lizarraga, who was part of the cocaine distribution ring under investigation. *Id.* at 6. Agent Brady also obtained two statements by Mr. Lizarraga that were used to investigate and subsequently establish probable cause against Mr. Stewart. *Id.* Mr. Lizarraga testified against Mr. Stewart at trial, where he testified that he witnessed Mr. Stewart receiving drugs from the main supplier. Cr. Dkt. 210 at 96. Finding no bias on the prosecutor's part, the Court denied the motion for a mistrial explaining "I think, although her husband, Shawn Brady, may be tangentially involved with another investigation, that his participation ceased; and he had, at least from what I have heard so far – had nothing to do with any subsequent investigation of Mr. Stewart." Cr. Dkt. 211 at 9.[6]

In his § 2255 motion, Mr. Stewart argues that the prosecutor's marriage to "the chief investigator . . . bias[ed]" her against him such that no reasonable plea offer was made to him. Dkt. 1 at 28. But Mr. Stewart has pointed to no

---

[6] Mr. Stewart points to *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 790 (1987), to support his argument that he was entitled to a disinterested prosecutor. But *Young* is readily distinguishable from Mr. Stewart's claim of prosecutorial bias. The petitioners in that case were found guilty of criminal contempt for their violation of a district court's injunction prohibiting infringement of the respondent's trademark. *Id.* at 789-90. Exercising its supervisory power, the Supreme Court found that the district court erred by appointing attorneys for the trademark holder to prosecute the contempt proceedings. *Id.* at 810. The Court explained here that "appointment of an interested prosecutor creates an appearance of impropriety that diminishes faith in the fairness of the criminal justice system in general." *Id.* at 812.   But Mr. Stewart has not demonstrated the type of conflict that was at issue in *Young*. The interest of the appointed prosecutors in that case was obvious by the fact that they represented the holder of the trademark alleged to have been infringed in the contempt proceedings. Here, at most, the prosecutor's husband investigated another individual who was also involved in the same drug trafficking ring as Mr. Stewart. This does not rise to the level of interest that the Supreme Court addressed in *Young*.

caselaw to support a conclusion that the tangential involvement in an investigation by a prosecutor's spouse creates impermissible bias or even the appearance of impropriety. Mr. Stewart also speculates that the prosecutor "used her power as prosecutor and Agent Brady's connections with Mr. Lizarraga to incentivize him to testify against the Mr. Stewart. [The prosecutor] was willing to negotiate a lower sentence for Mr. Lizarraga's, including a later reduction to time served just a year-and-a-half after his sentencing, to reach a conviction in Mr. Stewart's case." Dkt. 29 at 9. But Mr. Stewart provides no evidence to support such a claim beyond his own speculation of the prosecutor's motives and therefore nothing to suggest that appellate counsel performed deficiently by not raising such an argument on appeal. While he asserts that an evidentiary hearing is required to further develop this claim, the Court "may deny an evidentiary hearing if the petitioner's allegations are "too vague and conclusory." *Day v. United States*, 962 F.3d 987, 992 (7th Cir. 2020). That is the case here. Mr. Stewart's speculation regarding the prosecutor's motives are too conclusory to support his claim or warrant an evidentiary hearing.

Mr. Stewart also suggests "possible collusion" on the prosecutor's part "for 'planting' Larry Champion as [his] representation." Dkt. 10 at 1. But the only evidence that Mr. Stewart provides to support this assertion is an unsworn letter from his mother stating that Mr. Champion told her that he knew the prosecutor, that the prosecutor asked Mr. Champion to represent Mr. Stewart, and that Mr. Champion told her "I'm sorry . . . but your son is going to die in prison." Dkt. 10-

15 at 8.[7] First, the letter provides no basis for Ms. Stewart to have personal knowledge of her allegation that the prosecutor appointed Mr. Champion. And, even if Mr. Champion stated that he believed Mr. Stewart was going to die in prison, this statement does not suggest collusion between him and the prosecutor rather than Mr. Champion's assessment of the evidence against Mr. Stewart and potential sentencing exposure. Because Mr. Stewart presents no admissible evidence to support the suggestion that the prosecutor "planted" Mr. Champion, he has not established that he was denied a fair trial or the need for an evidentiary hearing on this allegation.

In short, while Mr. Stewart contends that the prosecutor was biased against him, he has not submitted sufficient evidence or argument to show that he was denied a fair trial or that such a claim could have been "significant and obvious" and "clearly stronger" than the claims counsel did raise on appeal. *Clark*, 680 F. App'x at 473. He has also failed to show that he was denied a fair trial as a result and that such a claim would have been successful on appeal. He therefore has failed to establish cause and prejudice to overcome his procedural default of this claim. *See McCleese*, 75 F.3d at 1179.

### VIII. Arguments Made in Reply

In reply in support of his § 2255 motion, Mr. Stewart presents several new arguments. First, he argues that his appellate counsel provided ineffective assistance by failing to supplement his appellate brief with a request to remand

---

[7] The Stipulation of Party contains a statement that counsel told Mr. Stewart's mother that he was going to die in prison. Dkt. 10-1 at 5. But that statement does not contain a checkmark indicating Mr. Champion's agreement.

for resentencing under the First Step Act. He also argues that his trial counsel was ineffective by failing to challenge the mandatory minimum sentence as inconsistent with 18 U.S.C. § 3553. But arguments raised for the first time in a reply brief are waived. *White v. United States*, 8 F.4th 547, 552–53 (7th Cir. 2021). These arguments therefore will not be considered here.

## IX. Conclusion

For the reasons explained in this Order, Mr. Stewart is entitled to relief on his § 2255 motion to the extent that he is entitled to resentencing. All other claims in his § 2255 motion are denied. His convictions stand. Judgment consistent with this Entry shall now issue and the Clerk shall **docket a copy of this Order in No. 1:15-cr-24-JPH-TAB-1.** The motion to vacate, Cr. Dkt. [234], shall also be **terminated** in the underlying criminal action.

## X. Denial of Certificate of Appealability

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition, rather, he must first request a certificate of appealability. *See Miller–El v. Cockrell*, 537 U.S. 322, 335 (2003); *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014). Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 proceedings, and 28 U.S.C. § 2253(c), the Court finds that Mr. Stewart has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The Court therefore **denies** a certificate of appealability as to the challenges to

Mr. Stewart's convictions that were denied.

**SO ORDERED.**

Date: 5/2/2023

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All Electronically Registered Counsel

31